*Original*

Teresa J. Moore
Eugene F. Herschelman
343 Hobron Lane, #4404
Honolulu, Hawaii 96815
Tel: (818) 206-1146
Fax: (818) 647-1186

*For the Plaintiffs.*

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 01 2009

at 2 o'clock and 00 min. __M.
SUE BEITIA, CLERK

# United States District Court
## District of the Hawaii
### 300 Ala Moana Boulevard, Honolulu, Hawaii

| | |
|---|---|
| Teresa J. Moore, 343 Hobron Lane, Apt 4404, Honolulu, Hawaii, ) | Civil Case Number: |
| Eugene F. Herschelman, 343 Hobron Lane, Apt 4404, Honolulu, Hawaii, ) Plaintiffs, ) | **CV09 00461 SOM BMK** |
| vs. ) | (Verified) **COMPLAINT** |
| NATIONAL CITY MORTGAGE COMPANY, dba COMMONWEALTH UNITED MORTGAGE COMPANY 3232 Newmark Drive, Miamisburg, OH 45342, ) | For the Relief of the Remedy by the Claims: |

NATIONAL CITY MORTGAGE COMPANY,
dba COMMONWEALTH UNITED
MORTGAGE COMPANY 3232 Newmark Drive,
Miamisburg, OH 45342,

NATIONAL CITY REAL ESTATE SERVICES,
LLC, 3232 Newmark Drive, Miamisburg, OH 45342,

WELLS FARGO BANK, N.A., 420 Montgomery
Street, San Francisco, CA 94104,

BANK OF HAWAII, Ala Moana Branch, 1441
Kapiolani Boulevard, Honolulu, HI 96814,

CAL-WESTERN RECONVEYANCE
CORPORATION, 525 East Main Street, El Cajon,
CA 92020,

DOES 1-100,

Defendants. )

(Verified)
**COMPLAINT**
For the Relief of the Remedy by the Claims:
1. H.O.E.P. Act Violation
2. R.E.S.P. Act Violation
3. T.I.L. Act Violation
4. F.R.C. Act Violation
5. Actual Fraud
6. Fiduciary Duty Breach
7. Constructive Fraud
8. Contract and Prospect Interference
9. Private Property Conversion
10. Civil Conspiracy
11. Unjust Enrichment
12. Unfair and Deceptive Business Practices
13. R.I.C.O. Act Violation
14. Injunctive Relief
15. Declaratory Relief

**Jury Trial Demand**

## COMPLAINT

This case stems from the outrageous, egregious and ongoing scheme of the identity fraud, of the mortgage fraud and of the fiduciary breaches by the defendants, who acted in their capacity as a banker, as a lender, as a mortgagee or as a trustee in the purchase of a condominium by the Mortgagor: Pacita I. Herschelman (Mortgagor). The defendants devised their scheme and used their positions to reap the profits of their enterprise at the expense of the Mortgagor, who died on the January 21, 2009. In the addition of the compensatory damages, of the consequential damages and of the other damages, the Plaintiff: Teresa J. Moore, as the personal representative of the Mortgagor, and the Plaintiff: Eugene F. Herschelman, as the surviving spouse of the Mortgagor, seek a mandatory injunction for the re-conveyance of the condominium, a judicial declaration for the cancellation of the mortgages and a final judgment for the quieting of the title.

WHEREFORE, The Plaintiffs: Teresa J. Moore and Eugene F. Herschelman (Plaintiffs) state:

### JURISDICTION OF THE COURT

1.      The claims of the action concern the violations of numerous federal statutes by the defendants. Thus, the United States District Court has the original jurisdiction of the case under the 28 U.S.C. § 1331 by the questions of the federal law and has the supplemental jurisdiction of the case under the 28 U.S.C. § 1367 by the claims of the state law.

2.      The action of the case concerns the title and the possession of the condominium at the address of the 343 Hobron Lane, Apartment 4404, Honolulu, Hawaii (condominium). Thus, the venue of the case is in the District of the Hawaii under the 28 U.S.C. § 1391 by the situation of the realty within the federal court district.

### PARTIES OF THE CASE

3.      The Plaintiff: Teresa J. Moore (Moore) is a competent woman who lives in the Honolulu County at the address of the 343 Hobron Lane, Apartment 4404, Honolulu, Hawaii. By the order of the appointment by the Hawaii First Circuit Court, the Plaintiff: Moore is the Personal Representative of the Mortgagor: Pacita I. Herschelman, who died on the January 21, 2009. The attachment of the **Exhibit-01** is a true and correct copy of the LETTERS OF ADMINISTRATION, which the Plaintiffs incorporate by this reference. The Plaintiff: Moore is with the possession of the

condominium and has the interest of the title by the right of the appointment and by the expenditure of her time and her labor in the pursuit of the property.

**4.**     The Plaintiff: Eugene F. Herschelman (Herschelman) is a competent man who lives in the Honolulu County at the address of the 343 Hobron Lane, Apartment 4404, Honolulu, Hawaii.  The Plaintiff: Herschelman is the surviving spouse of the Mortgagor by the termination of their fifty-four-year marriage.  The Plaintiff: Herschelman is with the possession of the condominium and has the interest of the title by the right of the survival and by the expenditure of his time and his labor in the pursuit of the property.

**5.**     The Defendant: NATIONAL CITY MORTGAGE, CO. (NCM) is an incompetent person that resides at the address of the 3232 Newmark Drive, Building 7, Miamisburg, OH 45342-5421.  The Defendant: NCM offers its home mortgage loans directly to its customers through the network of its corporate affiliates.   Its operations include the origination, the processing, the underwriting, the closing, the lending and the servicing of its home mortgage loans.  The Defendant: NCM is a subsidiary of the NATIONAL CITY CORPORATION.  On the December 31, 2008, the PNC FINANCIAL SERVICES completed the acquisition of the NATIONAL CITY CORPORATION by a stock purchase transaction.  As a division of the NATIONAL CITY BANK, Defendant: NCM does its business under the name: COMMONWEALTH UNITED MORTGAGE COMPANY.  The Defendant: NCM purports to be the beneficiary or the payee of a mortgage by the Mortgagor.

**6.**     The Defendant: NATIONAL CITY REAL ESTATE SERVICES, LLC (NCS) is an incompetent person that resides at the address of the 3232 Newmark Drive, Building 7, Miamisburg, OH 45342-5421.  The Defendant: NCS is the operating subsidiary of the NATIONAL CITY BANK and the successor of the Defendant: NCM by the operation of its merger with the NATIONAL CITY MORTGAGE, INC (f.k.a. NATIONAL CITY MORTGAGE, CO.).  The Defendant: NCS purports to be the successor of the Defendant: NCM by the effect of the merger.

**7.**     The Defendant: WELLS FARGO BANK, N.A. (WFB) is an incompetent person that resides at the address of the 420 Montgomery Street, San Francisco, CA 91404. The Defendant: WFB offers its real estate loans through the network of its corporate affiliates.  Its operations include the origination, the processing, the underwriting, the closing, the lending and the servicing of its home

mortgage loans. The Defendant: WFB purports to be the beneficiary or the payee of a mortgage by the Mortgagor.

8.      The Defendant: NCM, the Defendant: WFB and the Third-Party: NATIONAL CITY MORTGAGE CAPITAL, LLC operate a "Special Purpose Vehicle" or a trust, which they treat as a Real Estate Mortgage Investment Conduit (REMIC). Under the "Pooling and Service Agreement" of the trust, the Defendant: NCM, as the loan seller and servicer, and the Defendant: WFB, as the trustee, issue their "Mortgage Backed Securities" or their "Mortgage Pass-Through Certificates" (certificates) to the Third-Party: NATIONAL CITY MORTGAGE CAPITAL, LLC, as the depositor, which in turn sells the certificates to its various investors, as the underwriters of the "asset pool" (asset pooling scheme).

9.      The Defendant: BANK OF HAWAII (BOH) is an incompetent person that resides at the address of the Ala Moana Branch, 1441 Kapiolani Boulevard, Honolulu, HI 96814. As a subsidiary of the BANK OF HAWAII CORPORATION, the Defendant: BOH provides its banking services to its customers and is a member of the Federal Deposit Insurance Corporation.

10.     The Defendant: CAL-WESTERN RECONVEYANCE CORPORATION (CRC) is an incompetent person that resides at the address of the 525 East Main Street, El Cajon, CA 92020. The Defendant: CRC provides its "non-judicial foreclosure services" to the "lending and loan servicing community" and purports to be the attorney of the Defendants: NCM and NCS by the effect of an assignment, an appointment or a transfer.

11.     The Defendants: NCM, NCS, WFB, BOH and CRC are foreign and domestic corporations that transact their business in the state of the Hawaii by their local banking operations, by their money lending operations, by their loan servicing operations and by their loan foreclosure operations under the direction and the control of their directors, officers, employees and agents. These defendants are the subject of the regulation and the supervision by the Federal Deposit Insurance Corporation, by the Federal Reserve Board and by the Office of the Comptroller.

12.     The Plaintiffs are with the ignorance of the names and the capacities of the Defendants: DOES 1 – 100 and therefore sue these defendants by the fictitious names. The Defendants: DOES 1 – 100 are responsible for the injuries and the damages of the Plaintiffs by the actions of their wrongful

conduct. The Plaintiffs will amend this complaint upon the discovery of the names, capacities, relationships, and liabilities of the Defendants: DOES 1 – 100.

13.     During the period of this complaint, the Defendants were the agents or the employees of their co-defendants by the conduct of their actions in the pursuit of thier common objective.

## STATEMENT OF THE FACTS

14.     On or about the June 1, 2004, the Mortgagor applied for a first and second mortgage loan from the Defendants: NCM and WFB in a "residential purchase transaction" for the purchase of a condominium, which was to be the "principal dwelling place" of the Mortgagor.

15.     The employees or the agents of the Defendants: NCM and WFB pre-qualified the Mortgagor as a borrower and accepted a loan application for a "conventional adjustable rate mortgage." Although they qualified the Mortgagor at the initial annual percentage rate of the 5.000 percent interest, the Defendants: NCM and WFB ignored or omitted the qualification at the adjusted annual percentage rate of the 6.875 percent interest.

16.     After the borrower prequalification and the application acceptance, the Mortgagor and her husband deposited the sum of the $70,800.00 with the escrow company for the purchase of the condominium from the seller.

17.     At the end of the mortgage application process, the Mortgagor signed the numerous "closing" documents of the residential mortgage transaction, which the Defendants: NCM and WFB provided through their employees or their agents. However, no "officer" or authorized signer" of the Defendants: NCM or WFB ever signed these "closing" documents. Moreover, the Mortgagor never received a copy of the executed "closing" documents.

18.     In the transaction with the Mortgagor, the employees or the agents of the Defendants: NCM and WFB characterized these corporate entities as the "Lender." However, the Defendants: NCM and WFB were not the lenders in the transaction because the actual lender and the actual underwriter were other parties, who were the source of the loan funds and who concealed their identity from the Mortgagor at the closing.

19.     In the reality, the Defendants: NCM and WFB acted as the loan seller and received their fees and their profits in the mortgage production process as the principals in their relation with the residential appraiser, with the mortgage broker and with the mortgage originator.

**20.**   By the artifice of the mortgage prequalification process and the mortgage application process, the Mortgagor reasonably believed that she could satisfy the terms of the "loan" and that the loan seller, mortgage broker and mortgage originator had an interest in the success of the transaction.

**21.**   In the reality, the loan sellers, mortgage brokers, residential appraisers, loan originators, title agents, escrow agents and deed trustees had no financial stake or liability in the transaction and had no interest other than the obtainment of their fees or their commissions and the obtainment of the Mortgagor's signature on the "loans," which could never be repaid and which was contrary to the representations and the assurances of the participants in the scheme.

**22.**   The Defendants: NCM and WFB induced the Mortgagor into the residential mortgage transaction, which did not and could not meet the normal underwriting standards for a residential mortgage, by the facade of their lender title, by the artifice of their application process and by the scheme of their asset pooling.

**23.**   The Mortgagor relied upon the due diligence of the apparent "lender" in the execution and the acceptance of the "closing" documents.  However, the residential appraiser knowingly and intentionally inflated the "appraisal" of the property for the justification of the "loan" and no "lender" performed the due-diligence or the evaluation of the "loan" under the national underwriting and the risk evaluation standards.

**24.**   Thus, the inflated appraisal added an undisclosed cost to the "loan," which when added to the other terms, disclosed and undisclosed, and amortized over the real expected life of the "loan," exceeded the usury limits of the law and was not subject to an exemption because the presence of a financial institution in the transaction was a ruse, which mislead the Mortgagor to her detriment by the concealment of the transaction form, by the concealment of the real parties and by the concealment of the true costs.

**25.**   The common objective of the defendants was the collection of their fees, rebates, kickbacks and profits, which they never disclosed to the Mortgagor.  The Plaintiffs have only recently discovered these numerous misrepresentations through the consultation with the experts in the securitization of a residential mortgage loan.

**26.**   On the August 4, 2004, after the purported "closing" of the residential loan transaction, the officers, employees or agents of the Defendant: NCM recorded the "MORTGAGE" Document #

3147089 as the "Security Instrument" of the first mortgage (Loan # 0003415695) with the Honolulu County Registrar and received the "NOTE" of the $486,400.00 by the Mortgagor. Concurrently, the officers, employees or agents of the Defendant: WFB recorded the "MORTGAGE" Document # 3147091 as the "Security Instrument" of the second mortgage (Loan # 65046641910001) with the Honolulu County Registrar and received the "NOTE" of the $60,800.00 by the Mortgagor. Although, the Mortgagor signed these documents, no "officer" or "authorized signer" of the Defendants: NCM and WFB ever signed the recorded "loan documents."

27.    Before and after the "closing" of the residential loan transaction, the Defendants: NCM and WFB entered into various assignment agreements, transfer agreements, assumption agreements or pooling and servicing agreements with their investors or their mortgage aggregators without the knowledge or the consent of the Mortgagor. Under the terms of these agreements, the Defendants: NCM and WFB, as the loan sellers and servicers, received a sum of money upon the receipt of the loan application, which was equal to the gross amount of the loan plus a fee of the 2.5% or more.

28.    Contrary to the representations of the documents, before and during the "closing" of the transaction with the Mortgagor, the Defendants: NCM and WFB were neither the source of the "funding" nor the party of the "lending." Thus, at the time of the recording, the funding source and the lending party were of the different entities than the nominal mortgagees of the mortgages and the nominal payees of the notes.

29.    Thus, the security agreements secured an obligation, which a third-party had already paid. Moreover, the third-parties acted as a "financial intuition" or a "lending institution" without any charter, registration or license of the law by the state or the federal authorities.

30.    In the asset pooling scheme, the Defendant: NCM, as the loan seller, and the Defendant: WFB, as the trustee, presented some form of their documentation to the Mortgage Aggregator either before or at the time of the "closing" of the residential loan transaction with the Mortgagor. The Plaintiffs are aware and believe that, in some cases, the documentation presented to the Mortgage Aggregator consisted of the actual "closing" documents; while in other cases, the documentation consisted of the forged blank notes or of the vague note descriptions, which the parties placed into the "pool" of the "securitized" assets. The Plaintiffs are further aware and believe that, in many cases, the "closing" did not take place or that the documentation substantially differed from the original offer and

acceptance and substantially differed from what could have been reported to the Mortgage Aggregator before the "closing." Moreover, the Plaintiffs are aware and believe that there are numerous cases where the foreclosure proceeded despite the fact that no "closing" had ever occurred, that no papers were ever signed or that no loans were ever consummated due to their rescission.

31.     The Plaintiffs are ignorant of the version presented to the Mortgage Aggregator. The Plaintiffs do not know whether the Mortgage Aggregator took one or more varying descriptions of the alleged "loan documents" into one or more "asset pools" and then sold the "loan documents" as the "security" of the asset pool. Despite the demands of the Plaintiffs, the Defendants: NCM, NCS, WFB and CRC failed or refused the disclosure of any transfer, assignment, assumption or pooling and sharing agreements and failed or refused the accounting of any payments, fees, commissions or compensation.

32.     The Plaintiffs have searched the records of the Honolulu County Registrar and have found no assignment of the loans. Nevertheless, the Defendants: NCM and WFB are the participants in an asset pooling scheme, which they registered with the Securities and Exchange Commission (SEC) and are the members of an Affiliated Business Arrangement, which they did not disclose to the Mortgagor.

33.     Upon the information and the belief, the directors or the officers of the Defendants: NCM and WFB transferred the "loan documents" or the "notes" to the NATIONAL CITY MORTGAGE CAPITAL, LLC, which they formed as a "Special Purpose Vehicle" for the holding of their "pooled assets" by the means of their "Mortgage Pass-Through Certificates." Under this asset pooling scheme, the participants allocate the payments from one note to the deficiency of another note in an unrelated loan transaction, which is contrary to the terms of each note. Under the terms of each note, the servicer must allocate the payments to the principal, interest, escrow and fees of that specific "loan." The Plaintiffs believe that the asset pool accounting consists of the descriptions of the "loan documents," which the Mortgagor "signed," and reflects a greater value than the terms of the payment by the Mortgagor. The Plaintiffs are ignorant of whether the "deficiency" is from the difference between the higher value description of the note and the lower actual payment of the Mortgagor. Despite the demands of the Plaintiffs, the Defendants: NCM, NCS, WFB and CRC failed, refused or omitted the disclosure of any accounting and the disclosure of this information.

**34.**     Upon the belief of the information by the Plaintiffs, the participants in the asset pooling scheme procured an inflated appraisal of their certificates in the same way that the Defendants: NCM and WFB procured the inflated appraisal of the condominium, which is the "security" of their purported "loans." Additionally, the participants purchased their insurance policies and their credit default swaps from the proceeds of the loan transaction with the Mortgagor. Then the Special Purpose Vehicle "oversold" the investments of the investors to create a reserve pool and to pay the deficiencies. The Special Purpose Vehicle then "cross-collateralized" and "over-collateralized" the asset pool to assure the payments to the investors. Thus, the scheme created co-obligors on the payment stream from the "loan transaction" with the Mortgagor. The participants in this asset pooling scheme pledged the assets of the pool, which included the "loans" to the Mortgagor, to the owners of the "asset-backed securities" by the issuance of their "certificates." The participants then transferred the certificates to a seller, who in turn, sold the certificates in varying denominations and terms, depending on the segment or the tranche that secured the investment.

**35.**     If there is a "Holder in Due Course" of the "notes" from the loan transaction with the Mortgagor, then it is the investors who purchased the securities (certificates). While some of the securities may be held by the original purchaser; others are sold at the weekly auction markets; paid by the resale of the secured property; paid from the prepayments or paid by the sale at full or partial price to the investment bank that originated the entire transaction; held by the Federal Reserve as a non-recourse collateral or paid by one or more of the insurance, credit default swaps, cross guarantees or cross collateralizations of the pool segment that secured the relevant investor, who owns the certificates, which are backed by the asset pool, which includes the "loan documents" of the Mortgagor.

**36.**     The Plaintiffs doubt that the Defendants: NCM, NCS, WFB and CRC or their "officers" have made any attempt or any effort to determine whether the putative "Holders in Due Course" have been paid in whole or in part. On the other hand, the Plaintiffs are certain that the Defendants seek the enforcement of their "loan documents," which a third-party has already paid-in-full and seek the payment of their fees, which are the product of an illegal scheme. Moreover, these defendants add their insult to the injury by their demand of the property ownership long before the occurrence of any obligation, delinquency and default.

**37.**     For the purpose of any legal standing, the Defendants: NCM, NCS, WFB and CRC must show their competence as a "contracting party" with the Mortgagor, their exchange of any "valuable consideration," their chain of the "note title," their chain of the "mortgage title" and their status as a "Holder in due Course." Despite the demands of the Plaintiffs, the Defendants: NCM, NCS, WFB and CRC refuse the disclosure of these elements, which leads the Plaintiffs to the belief and the conclusion that the defendants have no such evidence.

**38.**     The Plaintiffs are in the position of an adversary with a ghost.  While the employees or the agents of the defendants have informally offered or considered the indemnification of any third-party claims, the fact remains that any relief awarded or any standing allowed to these defendants would expose the Plaintiffs to multiple claims and to multiple suits from an unknown number of parties, who could claim the status as the "Holder in Due Course." Thus, any grant of a title to an entity or to a nominal mortgagee creates an incurable defect in the title of the property.

**39.**     Under the asset pooling scheme, the trustee treats the trust as a Real Estate Mortgage Investment Conduit (REMIC) and issues its "pass through Certificates," which are "Mortgage backed Securities" (MBS), to enjoy the tax exempt status under the 15 U.S.C. §§ 806A-G.  The REMIC regulations impose a strict limitation upon the "permitted investments" and the "prohibited transactions." The violation of these REMIC regulations will defeat the privileged tax status of the trust and will subject the certificate holders to a 100% tax plus the penalties and the interest

**40.**     In order to maintain the REMIC status under the 26 U.S.C. § 806F(a)(2)(B), the Trustee and the Servicer may only deposit the income of a "qualified mortgage" or a "permitted investment" into the REMIC trust.  A "qualified mortgage" is "(1) any obligation … which is principally secured by an interest in real property, and is either transferred to the REMIC on the startup day in exchange for regular or residual interests, or purchased within three months after the startup day pursuant to a fixed-price contract in effect on the startup day …." A "permitted investment" includes "cash flow investments," "qualified reserve assets" and "foreclosure property." A "prohibited transaction" includes the disposition of a qualified mortgage (except where the disposition is "incident to" the foreclosure, default, or imminent default of the mortgage); or the receipt of any income from an asset that is not a qualified mortgage or a permitted investment.

**41.**   On a monthly basis, the directors and officers of the Defendants: NCM and WFB compiled, oversaw, approved and transmitted the Distribution Reports of their asset pooling scheme to other parties.   These reports included the number of the bankruptcies, the aggregate of the Special Servicing Fees and the aggregate of the Trust Fund Expenses.   These categories are essential for the assessment of the asset pool value by the certificate holders and for the rating of the certificates by the bond rating agencies.   The Distribution Reports must accurately reflect and inform the certificate holders of the "financial health of the trust."   However, these reports are routinely incomplete, false or misleading.

**42.**   Based upon the filings and the information of the Plaintiffs, it appears that no accurate accounting has ever been presented to anyone and that therefore the identity and the status of any putative "Holder in Due Course" is completely shrouded in the secrecy by the Defendants or by their directors, officers, employees and agents.   The unreported repurchases of the certificates or the classes of certificates would result in a profit to the REMIC trust, which the defendants did not credit to the Mortgagor and where the repurchase was far less than the original investment.   The Mortgagor and her husband would never have entered into the transaction if the defendants had revealed or disclosed the true nature of their participation in the asset pooling scheme.   Thus, the Defendants should credit the Plaintiffs with any profits, refunds, rebates, fees, points, costs or other income or gain from the asset pooling scheme.

**43.**   The representations of the Defendants: NCM and WFB by their directors, officers, employees or agents were of the false, misleading and material in the transaction with the Mortgagor. The directors, officers, employees or agents of these Defendants knew that the false, misleading and material representations contradicted the original Uniform Residential Loan Application, the initial Truth-in-Lending Disclosures, and the Mortgagor's stated intentions.   Additionally, the directors, officers, employees or agents of these Defendants knew that the material misrepresentations would induce the action of the Mortgagor.   Moreover, no "officer" or "authorized representative" of the Defendants: NCM and WFB ever signed the "disclosures" or the "loan documents."   Thus the non-disclosure or the concealment of the material facts by the Defendants actually caused the Mortgagor to "execute" the "loan documents."

**44.** Before the execution of the "disclosures" and the "loan documents" by the Mortgagor, the "officers" or the "authorized representatives" of the Defendants: NCM and WFB never advised or disclosed:

**A.** That the extension of the adjustable-rate loans were not in the best interests of the Mortgagor and her family;

**B.** That the favorability of the adjustable-rate loans were less than the favorability of the fixed-rate loans;

**C.** That the adjustable-rate loans were an inter-temporal transaction, wherein the terms and the risks of the transaction would change over the time;

**D.** That the Mortgagor had only qualified at the initial ("teaser") fixed interest rate and had not qualified at the three-year adjusted interest rate;

**E.** That the final "TIL" disclosure showed a "fixed rate" payment schedule and omitted the "adjusted rate" payment schedule;

**F.** That the Mortgagor would not be able to satisfy the obligations of the loans; given her income and expense history, after the three-year interest rate adjustment;

**G.** That the Mortgagor would likely be the subject of a default and of a foreclosure after the three-year interest rate adjustment;

**H.** That the Defendants: NCM and WFB had an Affiliated Business Arrangement by their participation in the asset pooling scheme;

**I.** That the Defendants: NCM and WFB, as the originating "lenders," never intended to retain or to service the loans and might have already presold the loans to a third-party mortgage aggregator before the closing;

**J.** That the Defendants: NCM and WFB, as the originating "lenders," actually intended to repeatedly sale and assign the loans to the various third-parties, which included one or more mortgage aggregators and investment bankers (including, but not limited to, the Defendants DOES 1-10);

**K.** That the ultimate purpose of the loans was for the transfer of the "notes" into the REMIC trust and then for the "bundling," the "packaging" or the "pooling" of the notes with the hundreds or perhaps the thousands of other notes as a security, more commonly known as a

"Collateralized Mortgage Obligation" or a "Mortgage-Backed Security" and then for the sale of the "security" to other parties for a "profit";

      **L.**    That the Defendants: NCM and WFB could or would sell, transfer, or assign the mortgage instruments and the promissory notes to other parties, who would later be the "holder" of the "notes," who would not be in the privity with the Mortgagor and who would have the right of the foreclose upon the default by the Mortgagor;

      **M.**    That, in the connection with the multiple down-line resale and assignment of the mortgage instruments and promissory notes, the assignees or the purchasers of the "notes" could make "pay-downs" against the notes, which would affect the true amount of the obligation by the Mortgagor;

      **N.**    That any successive assignee or purchaser of the mortgage instruments and promissory notes could unilaterally impose the requirement of a different property insurance from the original loan condition without the prior notice and the prior consent of the Mortgagor; and

      **O.**    That the Defendants: NCM and WFB had materially changed the nature of the mortgage loan application without knowledge or the consent of the Mortgagor.

    **45.**    By the color of the mortgage "application" and "closing" process, the directors, officers, employees or agents of the Defendants: NCM and WFB knowingly and intentionally placed the Mortgagor into a "sub-prime adjustable-rate mortgage program" by the use of their false material representations.

    **46.**    Before the "closing" of the transaction with the Mortgagor, the officers of the Defendants: NCM and WFB knowingly and intentionally omitted the preliminary "TIL" disclosure of the Truth-In-Lending Act (Regulation Z, 12 C.F.R. §§ 226.17 and 226.18) and knowingly and intentionally omitted the preliminary "GFE" disclosure of the Real Estate Settlement Procedures Act (24 C.F.R. §§ 3500.6 and 3500.7).

    **47.**    Before the "closing" of the transaction with the Mortgagor, the officers of the Defendants: NCM and WFB knowingly and intentionally omitted the preliminary disclosure that the "consumer credit contract" was void, illegal, and predatory by the cause of the false material representations.

    **48.**    After the "closing" of the transaction with the Mortgagor, the officers of the Defendants: NCM and WFB knowingly and intentionally omitted the final disclosure of the HUD-1

Settlement Statement, which must reflect the true cost of the "loan." The Mortgagor had no real knowledge of the transaction costs because the defendants omitted the delivery of the final "GFE" disclosure or the "Itemization of the Amount Financed" (IOAF) disclosure, which included the "Yield Spread Premium." Thus the defendants received the benefit of the "Yield Spread Premium," which raised the interest rate and which was unapproved by the Mortgagor. The omission of these disclosures violated the Truth-In-Lending Act (12 C.F.R. §§ 226.4(a), 226.17 and 226.18(d) and (c)(1)(iii)). Additionally, the Defendants: NCM and WFB understated the "Amount Financed" in the "TIL" disclosure, which violated the Truth-In-Lending Act (12 C.F.R. § 226.17 and 226.18 and 15 U.S.C. § 1602(u)).

49.     The Defendants: NCM and WFB omitted the preliminary disclosure of the "Yield Spread Premium" in their purported "Mortgage Loan Origination Agreement" or their purported "agreement" with the Mortgagor. Thus the receipt of the "Yield Spread Premium" by these defendants was an illegal "kickback," which violated the Real Estate Settlement Procedures Act (12 U.S.C. § 2607). The violation raises the claim for the restitution of all broker fees, costs, and attorney fees.

50.     The Defendants: NCM and WFB or their officers, employees or agents held themselves out as the professionals in the field of the consumer credit lending. Thus the Mortgagor reasonably relied upon the Defendants: NCM and WFB for the compliance of the rules, regulations and laws of the consumer credit transaction.

51.     At the closing of the "loan transaction," the Mortgagor executed the "Promissory Notes" and the "Security Agreements" in the favor of the Defendants: NCM and WFB, who designated the transaction as a "loan," which was the subject of a finance charge and was initially payable to those Defendants as the part of a "consumer credit transaction," wherein those defendants retained a security interest in the condominium, which was the Mortgagor's principal dwelling place.

52.     Upon the belief of the information by the Plaintiffs, the Defendants: NCM and WFB assigned the "Promissory Notes" and the "Security Agreements" to other parties under the pretext of their asset pooling scheme. The other parties did not take the instruments in the good faith or without the notice of the foregoing facts.

**53.**     From the September 2004 through the June 2006, the Mortgagor and the Plaintiffs made the monthly mortgage payments to the Defendants: NCM and WFB by the automatic withdrawal from their bank checking account: 0002-975084 with the Defendant: BOH.

**54.**     However, on or about the June 15, 2006, the Defendant: BOH posted two unauthorized debit entries to the bank checking account, which had the net effect of a $15,000.00 withdrawal, without the knowledge or the consent of the Mortgagor or the Plaintiffs. The unauthorized debit entries or the unauthorized money withdrawals by the Defendant: BOH caused the disruption of the automatic mortgage payments to the Defendants: NCM and WFB. After the demands of the restitution by the Mortgagor and the Plaintiffs, the Defendant: BOH refused the correction and the restitution of the unauthorized debit entries and then closed the bank checking account.

**55.**     The Defendants: NCM and WFB continued the attempts of their "Electronic Funds Transfer" against the closed checking account, which generated the insufficient funds fees, the returned item fees, and the attorney fees. The Defendants utilized these amounts, which they knew were inaccurate, to determine the amount allegedly due and owing for purpose of their intended foreclosure.

**56.**     On or about the February 15, 2007, the Mortgagor received an unsigned letter from the Defendant: NCM, which stated the "total amount due" was the amount: $4,452.73. On the same day, the Mortgagor tendered the payment of the $4663.62 by the next-day transmittal of her Check # 4473 to the Defendant: NCM. However, on or about the February 16, 2007, the Defendant: NCM refused the payment of the $4663.62 by the Mortgagor by the return of her Check # 4473 under the pretext that the "Payments must be made with certified funds."

**57.**     Between the February 16, 2007 and the March 21, 2008, the Mortgagor and the Plaintiffs made their payments to the Defendants: NCM and WFB, who refused and returned the payments under the pretext that the "Payments must be made with certified funds" or that the payments were "less than total due." On several occasions, the Defendants: NCM and WFB accepted and deposited the payments by the Plaintiffs and then returned the various sums to the Mortgagor by the transmittal of their checks under the pretext that the amount was "less than total due" and that the account had been referred to the Defendant: CRC for the foreclosure. The Defendants received the payments of the Mortgagor; held two unapplied payment for the 120-days or more; proceeded with their foreclosure; and then applied those payments after the payment of the unverified reinstatement.

58.     On or about the June, 4, 2007, the Defendant: NCS, as the "SUCCESSOR BY MERGER TO NATIONAL CITY MORTGAGE INC FKA NATIONAL CITY MORTGAGE CO," purportedly commenced the process of the foreclosure by the transmittal of its unsigned "NON-JUDICIAL FORECLOSURE" letter to the Mortgagor.   The enclosure of the NOTICE OF MORTGAGEE'S INTENTION TO FORECLOSE UNDER POWER OF SALE exhibits the signature of the Party: Anita M. Holbrook as the "Vice President" of the Defendant: NCS. The attachment of the **Exhibit-02** is a true and correct copy of the FIRST FORECLOSURE LETTER, which the Plaintiffs incorporate by this reference.

59.     On or about the June 12, 2007, the Mortgagor received the unsigned and unverified "Reinstatement Quote" of the $18,820.33 as the total amount due for the reinstatement of the loan from the Defendant: CRC.  In the reinstatement quote, the Defendant: CRC claimed the three payments due of the $6,485.82 ($2,161.94/month), the three payments due of the $6,964.47 ($2,321.49/month), the escrow shortage of the $1,676.92 and the other charges of the $3,693.12.

60.     On or about the June 19, 2007, the Mortgagor received the "Adjustable Rate Mortgage Notification," which stated that the interest rate would increase from the 4.875% to the 6.875% and that the mortgage payment would increase from the $1966.52 to the $3290.14 on the September 1, 2007. The Defendants: NCM represented the original monthly payment as the $1,976.00.

61.     On or about the June 29, 2007, the Mortgagor and the Plaintiffs tendered the total amount due of the $18,820.33 (less the offset of the $4,521.00) by the transmittal of the payment by two certified checks to the Defendant: CRC for the benefit of the Defendant: NCM. The attachment of the **Exhibit-03** is a true and correct copy of the PAYMENT TRANSMITTAL LETTER, which the Plaintiffs incorporate by this reference.

62.     On or about the July 7, 2007, the Mortgagor and the Plaintiffs received the unsigned letter from the Defendant: CRC, which enclosed the unsigned "Notice of Rescission" and the unsigned "Reinstatement Receipt."  The attachment of the **Exhibit-04** is a true and correct copy of the LOAN REINSTATEMENT LETTER, which the Plaintiffs incorporate by this reference.   However the "Reinstatement Receipt" did not acknowledge or apply the $4,591.24 in payments, which the Defendant: NCM had already received, and included the additional amount of the "LATE CHARGES." Although the recorded "Notice of Rescission" exhibited the signature of the Party:

Michael Ferguson as the "Mortgage Officer" of the Defendant: NCS; the Honolulu County Registrar never returned the purported original of the "Notice of Rescission" to the Mortgagor.

63.    Despite the purported "reinstatement" of the "loan" by the Defendant: NCS and the payments of the $18,820.33 by the Mortgagor, the Defendants: NCM and CRC commenced the process of the foreclosure by the transmittal of their unsigned "NON-JUDICIAL FORECLOSURE" letter to the Mortgagor on or about the January 2, 2008. The enclosure of the NOTICE OF MORTGAGEE'S INTENTION TO FORECLOSE UNDER POWER OF SALE exhibits the signature of the Party: Laura Cauper as the "Authorized Signer" of the Defendant: NCM.  The attachment of the **Exhibit-05** is a true and correct copy of the SECOND FORECLOSURE LETTER, which the Plaintiffs incorporate by this reference.

64.    On or after the January 17, 2008, the mortgagor entered into another loan modification and forbearance agreement with the Defendant: NCM, which incorporated an increased payment and an accelerated schedule.  In the reliance upon this purported agreement, the Mortgagor made the seven payments or more of the "certified funds" to the Defendant: NCM.  Despite these payments, the Defendant: NCM sent several unsigned letters to the Mortgagor, which stated that "Our records indicate that you have broken the forbearance agreement."

65.    On or about the February 10, 2009, the Plaintiff: Moore informed the Defendant: NCM of the death of the Mortgagor, which occurred on the January 21, 2009.  The attachment of the **Exhibit-06** is a true and correct copy of the FORECLOSURE STAY DEMAND, which the Plaintiffs incorporate by this reference.

66.    Despite the death of the Mortgagor, the proceeding of the probate case in the Hawaii Fist Circuit Court and the appointment of the Plaintiff: Moore as the Personal Representative, the Defendants: NCM, NCS and CRC have proceeded with the foreclosure of their "loan" by the transmittal of the twelve or more unsigned letters.  The Plaintiffs received the latest foreclosure sale notice on or about the September 14, 2009.  The attachment of the **Exhibit-07** is a true and correct copy of the LATEST FORECLOSURE LETTER, which the Plaintiffs incorporate by this reference.

67.    In order to reinstate the "loan," the Defendants: NCM and CRC require the application of a forbearance agreement by the Mortgagor (now deceased), the payment of the forbearance consideration at the $15,000.00 and the payment of the monthly mortgage at the $6,000.00.

## FIRST RELIEF CLAIM

### (H.O.E.P. Act Violation Against The Defendants: NCM and WFB)

**68.**     The Plaintiffs restate and incorporate the paragraphs of the 1 through the 67 by this reference.

**69.**     Under the Home Ownership Equity Protection Act (H.O.E.P. Act) (15 U.S.C. § 1639 *et seq.*), the Defendants: NCM and WFB are the creditors within the meaning of the Truth-In-Lending Act (15 U.S.C. § 1602(f)) and the Regulation Z (12 C.F.R. § 226.2 (a)(17)) by the regular extension of their "consumer credit" in the connection with their loans; which are the subject of a finance charge under a written agreement and payable in more than four installments and initially payable to the Defendants: NCM and WFB. The Plaintiffs are the consumers within the meaning of the 15 U.S.C. § 1602(h) by the receipt of the "consumer credit" in a residential mortgage transaction for the purchase of their principal dwelling.

**70.**     In the residential mortgage transaction with the Mortgagor, the Defendants: NCM and WFB required the payment of their fees, expenses and costs, which was more than ten-percent (10%) of the total loan amount before the closing.

**71.**     Under the § 1639(a)(l) of the H.O.E.P. Act, the creditor shall make certain material disclosures to the consumer "not less than 3 business days prior to consummation of the transaction" if the fees, costs and expenses were more than ten-percent of the total loan amount.   Under the H.O.E.P. Act, a mortgage: (1) may not contain a prepayment penalty; (2) may not provide for a higher interest rate after a default; (3) may not contain a balloon payment; (4) may not have a negative amortization; (5) may not contain more than two prepaid payments and (6) shall be capable of the repayment by the consumer.  Any mortgage, which contains a prohibited provision, constitutes "a failure to deliver the material disclosures" under the 15 U.S.C. § 1635. In the event of the non-compliance by the creditor, the 15 U.S.C. § 1640 imposes the civil liability for the mortgage rescission and for the actual damages.

**72.**     The Defendants: NCM and WFB concealed or omitted the material disclosures of the "Right to Cancel" under the 15 U.S.C. § 1635(a) and (b) and the 12 C.F.R. § 226.23(b).

**73.**     The Defendants: NCM and WFB concealed or omitted the material disclosures of the 15 U.S.C. § 1639(a)(1), which states, "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application" and "If you obtain this loan, the

lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan."

74.    The Defendants: NCM and WFB concealed or omitted the material disclosures of the 15 U.S.C. § 1639(a)(2)(B), which states, "[T]he creditor shall disclose ... the annual percentage rate of the loan, the amount of the regular monthly payment, a statement that the interest rate and monthly payment may increase, and the amount of the maximum monthly payment, based on the maximum interest rate allowed ...."

75.    The Defendants: NCM and WFB extended their consumer credit without the regard of the repayment ability by the Mortgagor, which violated the 15 U.S.C. § 1639(h).

76.    The concealment or the omission of these material disclosures and the extension of the credit without the regard of the consumer's repayment ability constitutes an unfair business practice.

77.    The Defendants: NCM and WFB violated the H.O.E.P. Act by the concealment or the omission of the material disclosures and by the extension of the credit without the regard of the consumer's repayment ability,.

78.    But for the violation of the H.O.E.P. Act by the Defendants: NCM and WFB, the Plaintiffs would have avoided the injury of their person and their property by the rejection of their fraudulent mortgage transaction.

79.    By the cause of the conduct by the Defendants: NCM and WFB, the Plaintiffs suffer the injury of their person by the loss of their time, labor and money and by the pain and the distress of their emotions and suffer the injury of their property by the loss or the impending loss of their dwelling.

80.    Under the totality of the circumstances, the acts of the Defendants: NCM and WFB by their officers, employees or agents are with the willful, wanton, or malice by the intent of their unlawful conduct and are with the callous and the reckless disregard for the rights of the Plaintiffs by the lack of any justification, excuse or defense.

81.    The Plaintiffs claim the remedy of the relief: (1) by the rescission or the cancellation of any credit agreement, (2) by the termination or the cancellation of any security interest, (3) by the return of the money paid or the property given, (4) by the award of the actual damages by the proof at the trial, (5) by the award of the punitive damages by the proof at the trial and (6) by the award of the actual costs and the actual fees of the prosecution.

82.     By the violations of H.O.E.P. Act by the Defendants: NCM and WFB, the Plaintiffs claim the right of the rescission under the 15 U.S.C. § 1635.  The Plaintiffs exercise the right of the rescission by the filing of this Complaint, which constitutes the Notice of the Rescission and the Rescission of the Consumer Credit Agreement, if any, under the H.O.E.P. Act by the Plaintiffs. Within the twenty-days (20-days) after the receipt of this notice, the creditors, if any, (1) shall cease the claims of any further finance charges; (2) "shall return to the [Plaintiffs] any money or property given as earnest money, downpayment, or otherwise" and (3) "shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."  Upon the performance of the obligations by the creditors under the 15 U.S.C. § 1635(b), "the [Plaintiffs] shall tender the property to the creditor[s], except that if return of the property in kind would be impracticable or inequitable, the [Plaintiffs] shall tender its reasonable value … at the location of the [condominium].  If the creditor[s] [do] not take possession of the property within 20 days after tender by the [Plaintiffs], ownership of the property vests in the [Plaintiffs] without obligation on [their] part to pay for it."

## SECOND RELIEF CLAIM

**(R.E.S.P. Act Violation By The Defendants: NCM, NCS, WFB and CRC)**

83.     The Plaintiffs restate and incorporate the paragraphs of the 1 through the 82 by this reference.

84.     Under the Real Estate Settlement Procedures Act (R.E.S.P. Act) (12 U.S.C. § 2601 *et seq*.), the Defendants: NCM, NCS, WFB and CRC are the persons that have the affiliated business arrangements and are the persons that provide the settlement services in the connection with a federally related mortgage loan.  The residential mortgage transaction with the Mortgagor is a federally related mortgage loan within the meaning of the 12 U.S.C. § 2602(1).

85.     Before, during or after the closing, the Defendants: NCM, NCS, WFB and CRC made the referrals to their affiliates; received and accepted fees other than for the services actually performed and omitted the material disclosures of the residential mortgage transaction.  The acceptance of the fees other than for the services actually performed and the omission or the concealment of the material disclosures constitutes an unfair business practice.

**86.** The Defendants: NCM, NCS, WFB and CRC violated the R.E.S.P. Act by the referrals to their affiliates, by the receipt and the acceptance of the fees other than for the services actually performed and by the omissions of the material disclosures.

**87.** But for the violations of the R.E.S.P. Act by the Defendants: NCM, NCS, WFB and CRC, the Plaintiffs would have avoided the injury of their person and their property by the rejection of the fraudulent mortgage transaction.

**88.** By the cause of the conduct by the Defendants: NCM, NCS, WFB and CRC, the Plaintiffs suffer the injury of their person by the loss of their time, labor and money and by the pain and the distress of their emotions and suffer the injury of their property by the loss or the impending loss of their dwelling.

**89.** Under the totality of the circumstances, the acts of the Defendants: NCM, NCS, WFB and CRC by their officers, employees or agents are with the willful, wanton, or malice by the intent of their unlawful conduct and are with the callous and the reckless disregard for the rights of the Plaintiffs by the lack of any justification, excuse or defense.

**90.** The Plaintiffs claim the remedy of the relief: (1) by the rescission or the cancellation of any credit agreement, (2) by the termination or the cancellation of any security interest, (3) by the return of the money paid or the property given, (4) by the award of the actual damages by the proof at the trial, (5) by the award of the treble damages by the proof at the trial under the 12 U.S.C. § 2607(d)(2) and (6) by the award of the actual costs and the actual fees of the prosecution.

### THIRD RELIEF CLAIM

(T.I.L. Act Violation By The Defendants: NCM and WFB)

**91.** The Plaintiffs restate and incorporate the paragraphs of the 1 through the 90 by this reference.

**92.** The Truth In Lending Act (T.I.L. Act) (15 U.S.C. § 1601 *et seq.*) and the implementing Regulation Z (12 C.F.R. 201 *et seq.*) require the material disclosures of the amount financed, of the finance charge, of the annual percentage rate and of other items by the Defendants: NCM and WFB in a consumer credit transaction.

**93.** The Defendants: NCM and WFB miscalculated the finance charge, miscalculated the annual percentage rate and concealed or omitted the material disclosures of those items. The

miscalculation of the finance charges and the omission or the concealment of the material disclosures constitutes an unfair business practice.

94.    The Defendants: NCM and WFB violated the T.I.L. Act and the implementing Regulation Z by the miscalculation and the non-disclosure of the finance charge and the annual percentage rate.

95.    But for the violation of the T.I.L. Act and the implementing Regulation Z by the Defendants: NCM and WFB, the Plaintiffs would have avoided the injury of their person and their property by the rejection of the fraudulent mortgage transaction.

96.    By the cause of the conduct by the Defendants: NCM and WFB, the Plaintiffs suffer the injury of their person by the loss of their time, labor and money and by the pain and the distress of their emotions and suffer the injury of their property by the loss or the impending loss of their dwelling.

97.    Under the totality of the circumstances, the acts of the Defendants: NCM and WFB by their officers, employees or agents are with the willful, wanton, or malice by the intent of their unlawful conduct and are with the callous and the reckless disregard for the rights of the Plaintiffs by the lack of any justification, excuse or defense.

98.    The Plaintiffs claim the remedy of the relief: (1) by the rescission or the cancellation of any credit agreement, (2) by the termination or the cancellation of any security interest, (3) by the return of the money paid or the property given, (4) by the award of the actual damages by the proof at the trial, (5) by the award of the punitive damages by the proof at the trial, (6) by the forfeiture or the disgorgement of the proceeds in the transaction and (7) by the award of the actual costs and the actual fees of the prosecution.

## FOURTH RELIEF CLAIM

### (F.R.C. Act Violation Against The Defendants)

99.    The Plaintiffs restate and incorporate the paragraphs of the 1 through the 98 by this reference.

100.   The Defendants are the information providers under the Fair Credit Reporting Act (F.C.R. Act) (15 U.S.C. § 1681 et. seq.) and provide their information to the Consumer Reporting Agencies: Experian, Equifax and TransUnion.

**101.**   During the course of the consumer credit transaction, the Defendants provided the incomplete or the inaccurate information to the Consumer Reporting Agencies and misinformed the Mortgagor about the negative information by the concealment or the non-disclosure of the material facts.

**102.**   By the provision of the incomplete or the inaccurate information by the Defendants, the Consumer Reporting Agencies reported the negative information about the Mortgagor in their credit reports, which lowered the credit worthiness of the Mortgagor.

**103.**   The Defendants furnished their false, incomplete or inaccurate information to the Consumer Reporting Agencies with the malicious or the willful intent to injure the Mortgagor by the failure of their material disclosures and by the failure of their diligent investigations.  The provision of the false, incomplete or inaccurate information to the Consumer Reporting Agencies constitutes an unfair business practice.

**104.**   The Defendants violated the F.C.R. Act by the provision of the false, incomplete or inaccurate information to the Consumer Reporting Agencies with the malicious or the willful intent to injure the Mortgagor.  Under the 15 U.S.C. § 1681(s)(2)(b), the Plaintiffs have the right of the action for the recovery of the damages by the negligent non-compliance under the 15 U.S.C. § 1681(o) or by the willful non-compliance under the 15 U.S.C. § 1681(n)(a)(s).

**105.**   But for the violation of the F.C.R. Act by the Defendants, the Plaintiffs would have avoided the injury of their person and their property by the rejection of the fraudulent mortgage transaction.

**106.**   By the cause of the conduct by the Defendants, the Plaintiffs suffer the injury of their person by the loss of their time, labor and money and by the pain and the distress of their emotions and suffer the injury of their property by the loss or the impending loss of their dwelling.

**107.**   Under the totality of the circumstances, the acts of the Defendants: NCM and WFB by their officers, employees or agents are with the willful, wanton, or malice by the intent of their unlawful conduct and are with the callous and the reckless disregard for the rights of the Plaintiffs by the lack of any justification, excuse or defense.

**108.**   The Plaintiffs claim the remedy of the relief: (1) by the rescission or the cancellation of any credit agreement, (2) by the termination or the cancellation of any security interest, (3) by the

return of the money paid or the property given, (4) by the award of the actual damages by the proof at the trial, (5) by the award of the punitive damages by the proof at the trial and (6) by the award of the actual costs and the actual fees of the prosecution.

## FIFTH RELIEF CLAIM

(Actual Fraud Against The Defendants)

**109.**   The Plaintiffs restate and incorporate the paragraphs of the 1 through the 108 by this reference.

**110.**   The officers, agents or employees of the Defendants made their numerous material representations by the cause of their oral and their written statements to the Plaintiffs before, during and after the "closing" of the residential mortgage transaction.

**111.**   The oral and the written statements by the Defendants were of the false material representations by the omission or the concealment of the mandatory disclosures by the law.

**112.**   The Defendants knew of the false material representations by the preconditions of the education, the training, the experience and the licensing of their profession.

**113.**   The Defendants made their false material representations with the objective and the intent of the profit from their enterprise at the expense of the Plaintiffs.

**114.**   The false material representations by the Defendants induced the reliance of the Plaintiffs by the actual execution of the "loan documents" and by the actual payments against the "notes."

**115.**   The Plaintiffs reasonably relied upon the false material representations by the lack of their knowledge, training or experience in the mortgage lending industry and by the repose of their trust in the Defendants as the mortgage and banking professionals.

**116.**   But for the fraudulent misrepresentations by the Defendants, the Plaintiffs would have avoided the injury of their person and the injury of their property by the rejection of the fraudulent mortgage transaction.

**117.**   By the cause of the conduct by the Defendants, the Plaintiffs suffer the injury of their person by the loss of their time, labor and money and by the pain and the distress of their emotions and suffer the injury of their property by the loss or the impending loss of their dwelling.

**118.**   Under the totality of the circumstances, the acts of the Defendants by their officers, employees or agents are with the willful, wanton, or malice by the intent of their unlawful conduct and are with the callous and the reckless disregard for the rights of the Plaintiffs by the lack of any justification, excuse or defense.

**119.**   The Plaintiffs claim the remedy of the relief: (1) by the rescission or the cancellation of any credit agreement, (2) by the termination or the cancellation of any security interest, (3) by the return of the money paid or the property given, (4) by the award of the actual damages by the proof at the trial, (5) by the award of the compensatory damages by the proof at the trial, (6) by the award of the punitive damages by the proof at the trial and (7) by the award of the actual costs and the actual fees of the prosecution.

## SIXTH RELIEF CLAIM

(Fiduciary Duty Breach Against The Defendants)

**120.**   The Plaintiffs restate and incorporate the paragraphs of the 1 through the 119 by this reference.

**121.**   In the relation of the parties, the Defendants held the position of the fiduciary by the repose of the trust by the Plaintiffs and by the imposition of the laws by the state.

**122.**   In the position of the fiduciary, the Defendants owed the duties of the care, of the competence and of the loyalty to the Plaintiffs by the cause of the fiduciary relation.

**123.**   Within the scope of these duties, the Defendants had the responsibility for the oversight of the loan consummation under the requirements of the Truth-In-Lending Act and the Real Estate Settlement Procedures Act.  Moreover the Defendants could not "profit" from the relation with the Plaintiffs.

**124.**   The Defendants breached the duties of the care, of the competence and of the loyalty by the violation of the federal lending laws, by the making of the false material representations, by the inducement of the fraudulent mortgage transaction and by the profiteering of the asset pooling scheme.

**125.**   But for the breaches of the fiduciary duties by the Defendants, the Plaintiffs would have avoided the injury of their person and their property by the rejection of the fraudulent mortgage transaction.

126.   By the cause of the conduct by the Defendants, the Plaintiffs suffer the injury of their person by the loss of their time, labor and money and by the pain and the distress of their emotions and suffer the injury of their property by the loss or the impending loss of their dwelling.

127.   Under the totality of the circumstances, the acts of the Defendants by their officers, employees or agents are with the willful, wanton, or malice by the intent of their unlawful conduct and are with the callous and the reckless disregard for the rights of the Plaintiffs by the lack of any justification, excuse or defense.

128.   The Plaintiffs claim the remedy of the relief: (1) by the rescission or the cancellation of any credit agreement, (2) by the termination or the cancellation of any security interest, (3) by the return of the money paid or the property given, (4) by the award of the actual damages by the proof at the trial, (5) by the award of the compensatory damages by the proof at the trial, (6) by the award of the punitive damages by the proof at the trial and (7) by the award of the actual costs and the actual fees of the prosecution.

### SEVENTH RELIEF CLAIM

(Constructive Fraud Against The Defendants)

129.   The Plaintiffs restate and incorporate the paragraphs of the 1 through the 128 by this reference.

130.   In the relation of the parties, the Defendants held the position of the fiduciary by the repose of the trust by the Plaintiffs and by the imposition of the laws by the state.

131.   In the position of the fiduciary, the Defendants owed the duties of the care, of the competence and of the loyalty to the Plaintiffs by the cause of the fiduciary relation.

132.   The Defendants breached the duties of the care, of the competence and of the loyalty by the violation of the federal lending laws, by the making of the false material representations, by the inducement of the fraudulent mortgage transaction and by the profiteering of the asset pooling scheme.

133.   The Defendants obtained the profits and the benefits of their enterprise by the advantage of the fiduciary position.

134.   The Plaintiffs reasonably and actually relied upon the representations of the Defendants by the participation in the residential mortgage transaction.

**135.**   But for the breach of the trust by the Defendants, the Plaintiffs would have avoided the injury of their person and their property by the rejection of the fraudulent mortgage transaction.

**136.**   By the cause of the conduct by the Defendants, the Plaintiffs suffer the injury of their person by the loss of their time, labor and money and by the pain and the distress of their emotions and suffer the injury of their property by the loss or the impending loss of their dwelling.

**137.**   Under the totality of the circumstances, the acts of the Defendants by their officers, employees or agents are with the willful, wanton, or malice by the intent of their unlawful conduct and are with the callous and the reckless disregard for the rights of the Plaintiffs by the lack of any justification, excuse or defense.

**138.**   The Plaintiffs claim the remedy of the relief: (1) by the rescission or the cancellation of any credit agreement, (2) by the termination or the cancellation of any security interest, (3) by the return of the money paid or the property given, (4) by the award of the actual damages by the proof at the trial, (5) by the award of the compensatory damages by the proof at the trial, (6) by the award of the punitive damages by the proof at the trial and (7) by the award of the actual costs and the actual fees of the prosecution.

## EIGHTH RELIEF CLAIM

(Contract and Prospect Interference Against The Defendant: BOH)

**139.**   The Plaintiffs restate and incorporate the paragraphs of the 1 through the 138 by this reference.

**140.**   The Plaintiffs had a contractual obligation with the Defendants: NCM and WFB for the making of the regular and the routine payments by the purport of the "loan documents" and the "notes" in the residential mortgage transaction.

**141.**   The Defendant: BOH or its officers knew of the contractual obligation with the Defendants: NCM and WFB by the arrangement of the automatic mortgage payments.

**142.**   The Defendant: BOH interfered with the contractual relation and the contractual prospect by the unauthorized and the unlawful withdrawal of the $15,000.00 or more from the bank checking account of the Plaintiffs.

**143.**   Although the officers and the employees of the Defendant: BOH promised the return of the money, the Defendant: BOH refused or neglected the return of the money to the bank checking account of the Plaintiffs.

**144.**   Despite the repeated demands for the return of the money by the Plaintiffs, the Defendant: BOH refused or neglected the return of the money to the bank checking account of the Plaintiffs.

**145.**   But for the unauthorized withdrawal of the money from the bank checking account, the Plaintiffs would have avoided the injury of their person and their property by the satisfaction of their payment obligations.

**146.**   By the cause of the conduct by the Defendant: BOH, the Plaintiffs suffer the injury of their person by the loss of their time, labor and money and by the distress of their emotions and suffer the injury of their property by the loss or the impending loss of their dwelling.

**147.**   Under the totality of the circumstances, the acts of the Defendant: BOH by their officers, employees or agents are with the willful, wanton, or malice by the intent of their unlawful conduct and are with the callous and the reckless disregard for the rights of the Plaintiffs by the lack of any justification, excuse or defense.

**148.**   The Plaintiffs claim the remedy of the relief: (1) by the rescission or the cancellation of any credit agreement, (2) by the termination or the cancellation of any security interest, (3) by the return of the money paid or the property given, (4) by the award of the actual damages by the proof at the trial, (5) by the award of the compensatory damages by the proof at the trial, (6) by the award of the punitive damages by the proof at the trial and (7) by the award of the actual costs and the actual fees of the prosecution.

## NINTH RELIEF CLAIM

(Private Property Conversion Against The Defendants)

**149.**   The Plaintiffs restate and incorporate the paragraphs of the 1 through the 148 by this reference.

**150.**   During the course of the residential mortgage transaction, the Plaintiffs expended their time, their labor and their money in the pursuit of the property ownership.  The extension of the time, labor and money was the personal property of the Plaintiffs by the right of the law.

**151.**    The Defendants intentionally interfered with the personal property of the Plaintiffs by the cause of their fraudulent representations, by the cause of their fiduciary breaches, by the cause of their contract interference and by the cause of their property taking.

**152.**    But for the intentional interference by the Defendants, the Plaintiffs would have avoided the injury of their person and their property by the rejection of the fraudulent mortgage transaction.

**153.**    By the cause of the conduct by the Defendants, the Plaintiffs suffer the injury of their person by the loss of their time, labor and money and by the pain and the distress of their emotions and suffer the injury of their property by the loss or the impending loss of their dwelling.

**154.**    Under the totality of the circumstances, the acts of the Defendants by their officers, employees or agents are with the willful, wanton, or malice by the intent of their unlawful conduct and are with the callous and the reckless disregard for the rights of the Plaintiffs by the lack of any justification, excuse or defense.

**155.**    The Plaintiffs claim the remedy of the relief: (1) by the rescission or the cancellation of any credit agreement, (2) by the termination or the cancellation of any security interest, (3) by the return of the money paid or the property given, (4) by the award of the actual damages by the proof at the trial, (5) by the award of the compensatory damages by the proof at the trial, (6) by the award of the punitive damages by the proof at the trial and (7) by the award of the actual costs and the actual fees of the prosecution.

## TENTH RELIEF CLAIM

(Civil Conspiracy Against The Defendants)

**156.**    The Plaintiffs restate and incorporate the paragraphs of the 1 through the 155 by this reference.

**157.**    On or about the July 12, 2004, the Defendants entered into a conspiracy to deprive the Plaintiffs of their possession and their title to the condominium by their oral and their written communications.

**158.**    The Defendants advanced the object of their conspiracy by the making of their false material representations, by the concealment or the omission of the material disclosures, by the non-disclosure or the concealment of their Affiliated Business Arrangements, by the fraudulent inducement of their "loans" and by the unlawful taking of the property.

**159.**   The last overt act in the furtherance of the conspiracy occurred on or about the September 11, 2009 by the post of the foreclosure sale notice by the Defendants: NCM and CRC.

**160.**   But for the conspiracy by the Defendants, the Plaintiffs would have avoided the injury of their person and the injury of their property by the rejection of the fraudulent mortgage transaction.

**161.**   By the cause of the conduct by the Defendants, the Plaintiffs suffer the injury of their person by the loss of their time, labor and money and by the pain and the distress of their emotions and suffer the injury of their property by the loss or the impending loss of their dwelling.

**162.**   Under the totality of the circumstances, the acts of the Defendants by their officers, employees or agents are with the willful, wanton, or malice by the intent of their unlawful conduct and are with the callous and the reckless disregard for the rights of the Plaintiffs by the lack of any justification, excuse or defense.

**163.**   The Plaintiffs claim the remedy of the relief: (1) by the rescission or the cancellation of any credit agreement, (2) by the termination or the cancellation of any security interest, (3) by the return of the money paid or the property given, (4) by the award of the actual damages by the proof at the trial, (5) by the award of the compensatory damages by the proof at the trial, (6) by the award of the punitive damages by the proof at the trial and (7) by the award of the actual costs and the actual fees of the prosecution.

## ELEVENTH RELIEF CLAIM

(Unjust Enrichment Against The Defendants)

**164.**   The Plaintiffs restate and incorporate the paragraphs of the 1 through the 163 by this reference.

**165.**   During the course of the residential mortgage transaction, the Plaintiffs tendered the payments of the $200,000.00 or more to the Defendants.  The payments of the $200,000.00 or more had the value of the something by the expenditure of the time, of the labor and of the energy by the Plaintiffs.

**166.**   During the course of the residential mortgage transaction, the Defendants acknowledged, accepted and benefitted from the payments by the Plaintiffs, who made the payments in the expectation of a fair exchange.

167.    In the exchange for the payments, the Plaintiffs expected the purchase of the condominium at the value of the (≈)$700,000.00.  Additionally, the Plaintiffs expected the gain of the appreciation at the value of the (≈)$350,000.00.  While the current market is at the value of the (≈)$600,000.00, the Defendants have set their opening sale bid at the value of the (≈)$500,000.00.

168.    By the receipt of the payments, the Defendants obtained the benefit of the $200,000.00 or more at the expense of the time, labor and energy by the Plaintiffs.  Additionally, the Defendants obtained the benefit of an unknown amount by the charging of the higher interest rates, by the charging of the excessive fees, by the giving of the rebates or the "kickbacks" in their mortgage production scheme and by the receiving of the profits or the gains in their asset pooling scheme.  Moreover, the Defendants will obtain the benefit of the $500,000.00 or more at the expense of the time, labor and energy by the Plaintiffs by the sale of the property on the October 9, 2009.

169.    The Defendants knew that their mortgage application process was a "bait and switch" scheme by the inducement of the "adjustable rate mortgage"; knew that the "yield spread premium" was an increase in the interest rate for the Plaintiffs; knew that the "yield spread premium" was an "up sell" in the interest rate for the broker and knew that the "loan" was not in the "best interests" of the Plaintiffs.

170.    The retention of the benefits at the expense of the Plaintiffs is inequitable, unjust and unconscionable.

171.    By the cause of the conduct by the Defendants, the Plaintiffs suffer the injury of their person by the loss of their time, of their labor and of their energy and by the pain and the distress of their emotions and suffer the injury of their property by the loss or the impending loss of their dwelling.

172.    Under the totality of the circumstances, the acts of the Defendants by their officers, employees or agents are with the willful, wanton, or malice by the intent of their unlawful conduct and are with the callous and the reckless disregard for the rights of the Plaintiffs by the lack of any justification, excuse or defense.

173.    The Plaintiffs claim the remedy of the relief: (1) by the rescission or the cancellation of any credit agreement, (2) by the termination or the cancellation of any security interest, (3) by the return of the money paid or the property given, (4) by the award of the actual damages by the proof at

the trial, (5) by the award of the compensatory damages by the proof at the trial, (6) by the award of the punitive damages by the proof at the trial and (7) by the award of the actual costs and the actual fees of the prosecution.

### TWELFTH RELIEF CLAIM

(Unfair And Deceptive Practices By The Defendants)

**174.** The Plaintiffs restate and incorporate the paragraphs of the 1 through the 173 by this reference.

**175.** Although the Defendants held themselves out as the professionals by the qualifications of their corporate franchise and by the pretext of their commercial advertising, the defendants committed numerous unfair and deceptive practices, which harmed and damaged the Plaintiffs.

**176.** The harm of the unfair and deceptive practices outweighs the benefit. Moreover the continuation of the unfair and deceptive practices will likely mislead other consumers.

**177.** The Plaintiffs claim the remedy of the relief: (1) by the restitution of the property to the Plaintiffs and (2) by the injunction of the unfair and deceptive practices by the Defendants.

### THIRTEENTH RELIEF CLAIM

(Violation of the R.I.C.O. Act by the defendants)

**178.** The Plaintiffs restate and incorporate the paragraphs of the 1 through the 176 by this reference.

**179.** During the course of the residential mortgage transaction, the Defendants engaged in a pattern and practice of the fraud and the deceit (1) by the omission of the mandatory disclosures; (2) by the concealment of the material facts; (3) by their conspiracy against the Plaintiffs; (4) by the breach of their fiduciary duties, (5) by the failure of the payment applications; (6) by the failure of the interest and fee calculations and (7) by the failure of the account entries.

**180.** The officers, employees or agents of these Defendants had the knowledge of these failures; but received or disbursed the money of the Plaintiffs, who made their payments upon the improper, inaccurate and fraudulent representations by the Defendants.

**181.** Given the volume of the residential loan transactions, the Defendants engaged in two or more instances of the racketeering activity; which involved the different victims but utilized the same method, means, mode and operation, by the intended conduct of their enterprise.

**182.**    The officers, employees or agents of these Defendants perpetrated the fraud upon the Plaintiffs by the use of their multiple corporate entities, multiple parties, concerted and predetermined outcomes.  The pattern of the fraud by the use of their multiple entities and parties constitutes an "enterprise" within the meaning of the RICO statute.

**183.**    Given that the consumer credit transaction was an inter-temporal transaction with multiple assignments as part of an aggregation and given that the REMIC tranche itself was a part of a predetermined and identifiable collateralized mortgage obligation, the Defendants shared in the illegal proceeds of the transaction; conspired with each other to defraud the Plaintiffs of the fruits of their labor; acted in a conspiracy to wrongfully deprive the Plaintiffs of their property; acted in a conspiracy to essentially steal or to convert their dwelling without the giving of any reasonably equivalent value; and conducted the illegal enterprise within the meaning of the RICO statute.

**184.**    The officers, employees or agents of these Defendants agreed to join the conspiracy, agreed to commit predicate acts, and knew that their acts were the part of a racketeering pattern.

**185.**    But for the conduct of the enterprise by the Defendants, the Plaintiffs would have avoided the injury of their property by the rejection of the fraudulent mortgage transaction, by the avoidance of the fraudulent material representations and by the avoidance of the multiple corporate entities.

**186.**    By the cause of the conduct by the enterprise, the Plaintiffs suffer the injury of their property by the loss or the impending loss of their dwelling.

**187.**    Under the totality of the circumstances, the acts of the Defendants by their officers, employees or agents are with the willful, wanton, or malice by the intent of their unlawful conduct and are with the callous and the reckless disregard for the rights of the Plaintiffs by the lack of any justification, excuse or defense.

**188.**    The Plaintiffs claim the remedy of the relief by the injunction of the enterprise and by the prosecution of the persons responsible.

## FOURTEENTH RELIEF CLAIM

(Injunctive Relief Against The Defendants)

**189.**    The Plaintiffs restate and incorporate the paragraphs of the 1 through the 188 by this reference.

190.    The Plaintiffs are the lawful owners of the condominium at the 343 Hobron Lane, Apartment 4404, Honolulu, Hawaii by the right of their possession, by the right of their succession, by the right of their representation and by the right of the law.

191.    The defendants seek the possession, the custody and the control of the property by the color of their "non-judicial foreclosure sale" on the October 9, 2009 at 12:00 pm "AT THE EWA END AREA FRONTING THE FIRST CIRCUIT COURT BUILDING, 777 PUNCHBOWL STREET, HONOLULU, HAWAII."

192.    The purported foreclosure sale notice is void by the lack of the valid notice and by the lack of the standing for the commencement and the prosecution of the "non-judicial foreclosure sale."

193.    The officers, employees or agents of the Defendants refuse the attempts of the communication by the Plaintiffs and refuse the postponement of their "non-judicial foreclosure sale."

194.    The Plaintiffs have no adequate and immediate remedy under the law because the condominium is unique real property and money damages will not compensate for the loss.

195.    Therefore the Plaintiffs seek the equitable relief of an emergency injunction against the foreclosure sale by the order of the Court.

196.    The Plaintiffs will suffer the irreparable harm by the loss of the condominium title at the foreclosure sale on the October 9, 2009.  On the other hand, the Defendants will suffer little or no harm to their interests by the order of the emergency injunction.

197.    Thus the irreparable harm to the Plaintiffs substantially outweighs the minimal harm to the Defendants.  Moreover, the grant of the emergency injunction supports the public interest by the arrest of the illegal and the unlawful conduct by the defendants.

198.    Since the Defendants will suffer minimal or no harm by the imposition of any costs or other damages, then the Plaintiffs seek the order of the emergency injunction without the requirement of a bond.

### FIFTEENTH RELIEF CLAIM

(Declaratory Relief Against The Defendants)

199.    The Plaintiffs restate and incorporate the paragraphs of the 1 through the 198 by this reference.

**200.**  The Defendants are with the void of any legal or equitable title in the condominium by the lack of the status as a "Holder in Due Course."

**201.**  Thus the Defendants lack the legal authority and the legal standing for the consummation of any "non-judicial foreclosure sale" of the condominium.

**202.**  Therefore the Plaintiffs request the declaration of no "standing" by the Defendants for the consummation of any foreclosure by the judgment and the order of the Court.

## DEMAND OF THE JUDGMENT

WHEREFORE, the Plaintiffs demand the judgment against the Defendants, individually and severally, of the relief:

**A.**    By the emergency injunction against the impending foreclosure sale;

**B.**    By the mandatory injunction against the unfair and deceptive practices;

**C.**    By the declaration for the cancellation of the "loan documents";

**D.**    By the declaration for the quieting of the condominium title;

**E.**    By the order of an accounting;

**F.**    By the order of a constructive trust;

**G.**    By the award of the actual damages;

**H.**    By the award of the compensatory damages;

**I.**    By the award of the punitive damages;

**J.**    By the award of the pre and the post judgment interest; and

**K.**    By the award of the costs and fees.

## DEMAND OF THE TRIAL

THEREFORE, the Plaintiffs demand the trial of the claims by the jury of the People.

//

//

//

//

//

//

//

## ACKNOWLEDGMENT OF THE PLAINTIFFS

After a reasonable inquiry, the Plaintiff: Teresa J. Moore certifies to the best of her knowledge, information, and belief that the facts are supported by the evidence and that the claims are warranted by the law.


DATE: September 29, 2009                    Respectfully Presented,



Teresa J. Moore
343 Hobron Lane, #4404
Honolulu, Hawaii 96815
Tel: (818) 206-1146
Fax: (818) 647-1186
teresa_j_moore@yahoo.com



## VERIFICATION OF THE COMPLAINT

I, Teresa J. Moore, am the plaintiff in the action.  I have read the complaint and know the contents by my own knowledge, except the matters upon my information and belief, which I believe to be true.  I declare under the penalty of the perjury that the foregoing statements are with the truth.  I further declare that I executed this verification at the _Studio City, CA_ .


DATE: September 29, 2009                    Respectfully Presented,



Teresa J. Moore
343 Hobron Lane, #4404
Honolulu, Hawaii 96815
Tel: (818) 206-1146
Fax: (818) 647-1186

After a reasonable inquiry, the Plaintiff: Eugene F. Herschelman certifies to the best of his knowledge, information, and belief that the facts are supported by the evidence and that the claims are warranted by the law.


DATE: <u>September 29, 2009</u>                     Respectfully Presented,




*Eugene F Herschelman*
Eugene F. Herschelman
343 Hobron Lane, #4404
Honolulu, Hawaii 96815
Tel: (818) 206-1146
Fax: (818) 647-1186




## <u>VERIFICATION OF THE COMPLAINT</u>

I, Eugene F. Herschelman, am the plaintiff in the action. I have read the complaint and know the contents by my own knowledge, except the matters upon my information and belief, which I believe to be true. I declare under the penalty of the perjury that the foregoing statements are with the truth. I further declare that I executed this verification at the *Pittsburg California* .


DATE: <u>September 29, 2009</u>                     Respectfully Presented,




*Eugene F Herschel*
Eugene F. Herschelman
343 Hobron Lane, #4404
Honolulu, Hawaii 96815
Tel: (818) 206-1146
Fax: (818) 647-1186

## ACKNOWLEDGMENT OF THE PLAINTIFFS

After a reasonable inquiry, the Plaintiff: Eugene F. Herschelman certifies to the best of his knowledge, information, and belief that the facts are supported by the evidence and that the claims are warranted by the law.

DATE: September 29, 2009                 Respectfully Presented,

_____
Eugene F. Herschelman
343 Hobron Lane, #4404
Honolulu, Hawaii 96815
Tel: (818) 206-1146
Fax: (818) 647-1186

## VERIFICATION OF THE COMPLAINT

I, Eugene F. Herschelman, am the plaintiff in the action.  I have read the complaint and know the contents by my own knowledge, except the matters upon my information and belief, which I believe to be true.  I declare under the penalty of the perjury that the foregoing statements are with the truth.  I further declare that I executed this verification at the _____ .

DATE: September 29, 2009                 Respectfully Presented,

_____
Eugene F. Herschelman
343 Hobron Lane, #4404
Honolulu, Hawaii 96815
Tel: (818) 206-1146
Fax: (818) 647-1186